Beth J. Ranschau, Esq. (13846)
Emily B. Nuvan, Esq. (17722)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, UT 84111
Phone: (801) 532-1500
branschau@rqn.com
enuvan@rqn.com

William J. Delany, Esq. (Pro Hac Vice)
Larry M. Blocho Jr., Esq. (Pro Hac Vice)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Ave. NW, Suite 1200
Washington, DC 20006
Phone: (202) 861-6643
wdelany@groom.com
lblocho@groom.com

*Attorneys for Defendant Ivanti, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **PAMELA NOETLING**, and **GINNY SWEENEY**, individually and on behalf of the Ivanti Inc. 401(K) Plan, and on behalf of all similarly situated participants and beneficiaries of the plan,<br><br>    Plaintiffs,<br><br>    v.<br><br>**IVANTI, INC.** and John and Jane Does 1-30 in their capacities as fiduciaries,<br><br>    Defendants. | **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Case No. 2:26-cv-00208<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

**TABLE OF CONTENTS**

SPECIFIC GROUNDS REQUESTED FOR RELIEF ...................................................................... 1

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 3

LEGAL STANDARD...................................................................................................................... 6

ARGUMENT................................................................................................................................... 7

    I.   Plaintiffs Fail to State an Imprudence Claim Based on the American Century TDFs. ...... 7

        A.     Plaintiffs Fail to Establish Any Meaningful Benchmarks. .................................... 9

        B.     Even Assuming a Meaningful Benchmark, Plaintiffs Do Not Allege Material, Sustained Underperformance................................................................................. 12

CONCLUSION.............................................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Abel v. CMFG Life Ins. Co.*,
No. 3:22-cv-00449, 2024 WL 307489 (W.D. Wisc. Jan. 26, 2024) .............................. 5, 11, 15

*Anderson v. Intel Corp. Inv. Pol'y Comm.,*
137 F.4th 1015 (9th Cir. 2025), *cert. granted*, No. 25-498, 2026 WL 120679 (Jan. 16, 2026)
.................................................................................................................................... 10, 11, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 6

*Batt v. 3M Co.*,
No. 0:25-cv-00319, 2026 WL 674322 (D. Minn. Mar. 10, 2026) ......................................... 10

*Beldock v. Microsoft Corp.*,
No. 2:22-cv-01082, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) .................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 6

*Birse v. Century Link, Inc.*,
No. 1:17-cv-02872, 2020 WL 1062902 (D. Colo. Mar. 5, 2020) .......................................... 12

*Bracalente v. Cisco Sys., Inc.*,
No. 5:22-cv-04417, 2024 WL 2274523 (N.D. Cal. May 20, 2024)....................................... 11

*Dawson v. Brookfield Asset Mgmt. LLC*,
No. 1:25-cv-00852, 2026 WL 835553 (N.D. Ohio Mar. 26, 2026)........................ 5, 12, 14, 15

*Dorman v. Charles Schwab Corp.*,
No. 4:17-cv-00285, 2019 WL 580785 (N.D. Cal. Feb. 8, 2019) .......................................... 12

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014).................................................................................................... 1, 6

*Fitzpatrick v. Neb. Methodist Health Sys., Inc.*,
No. 8:23-cv-00027, 2023 WL 5105362 (D. Neb. Aug. 9, 2023)....................................... 4, 10

*Hall v. Cap. One Fin. Corp.*,
No. 1:22-cv-00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)......................................... 15

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)................................................................................................. 2, 7, 16

*Jones v. Dish Network Corp.*,
No. 1:22-cv-00167, 2023 WL 2644081 (D. Colo. Mar. 27, 2023)................................... 13, 15

*Luckett v. Wintrust Fin. Corp.*,
No. 1:22-cv-03968, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024)....................................... 11

*Macias v. Sisters of Charity of Leavenworth Health Sys.*,
No. 1:23-cv-01496, 2025 WL 4095840 (D. Colo. Jan. 6, 2025) ........................................... 10

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ................................................................................... passim

*Matney v. Barrick Gold of N. Am., Inc.*,
No. 2:20-cv-00275, 2022 WL 1186532 (D. Utah Apr. 21, 2022), *aff'd*, 86 F.4th 1136 (10th Cir. 2023) ............................................................................................................................. 7, 8

*Matousek v. MidAm. Energy Co.*,
51 F.4th 274 (8th Cir. 2022) .................................................................................................. 9

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ......................................................................................... passim

*Nolan v. Sonic Auto., Inc.*,
No. 3:25-cv-00474, 2026 WL 1195596 (W.D.N.C. May 1, 2026)................................... 12, 15

*Patterson v. Morgan Stanley*,
No. 16-cv-06568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)............................................. 13

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)................................................................................................... 6

*Peterson v. Martinez*,
707 F.3d 1197 (10th Cir. 2013) ............................................................................................. 6

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
No. 5:23-cv-03785, 2025 WL 2689268 (N.D. Cal. Sept. 19, 2025)................................. passim

*Pizarro v. Home Depot, Inc.*,
111 F.4th 1165 (11th Cir. 2024) ..................................................................................... 12, 16

*Ramos v. Banner Health*,
461 F. Supp. 3d 1067 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021)............................ 7

iii

Case 2:26-cv-00208-HCN-DAO   Document 19   Filed 06/02/26   PageID.157   Page 5 of 23

*Reetz v. Lowe's Cos.*,
  No. 5:18-cv-00075, 2021 WL 4771535 (W.D.N.C. Oct. 12, 2021), *aff'd sub nom., Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2023) .............................................. 16

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ........................................................................................ passim

*Smith v. Shoe Show, Inc.*,
  No. 1:20-cv-00813, 2022 WL 583569 (M.D.N.C. Feb. 25, 2022) ........................................... 3

*Wilcox v. Georgetown Univ.*,
  No. 1:18-cv-00422, 2019 WL 132281 (D.D.C. Jan. 8, 2019) ................................................ 14

*Wyo-Ben Inc. v. Haaland*,
  63 F.4th 857 (10th Cir. 2023) ............................................................................................... 3

iv

## SPECIFIC GROUNDS REQUESTED FOR RELIEF

Defendant Ivanti, Inc. ("Ivanti"), by and through undersigned counsel, hereby moves to dismiss Plaintiffs' Class Action Complaint (Dkt. 1) ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court should dismiss the Complaint in its entirety with prejudice—including Counts I (Breach of Fiduciary Duty of Prudence under ERISA) and II (Failure to Adequately Monitor other Fiduciaries Under ERISA)—because it fails to state any plausible claim upon which relief can be granted.

Ivanti respectfully requests that, upon due consideration of the motion and controlling precedent, the Court order the dismissal of the Complaint and this action with prejudice.

## INTRODUCTION

This Complaint (Dkt. 1) is one of the "meritless goats" the Supreme Court warned about. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). It recycles a template that Plaintiffs' counsel has deployed in thirteen other near-identical cases filed this year challenging the American Century target date funds ("American Century TDFs").[1] The playbook is identical: take a conservative target date fund ("TDF") series designed to manage downside risk; compare it to more aggressive, equity-heavy TDFs with different objectives; cherry-pick short timeframes in which those riskier TDFs slightly outperformed; ignore the obvious differences in strategy and risk profile that explain those results; and brand the resulting "underperformance" an ERISA

---

[1] *Benotti v. Lockton, Inc.*, No. 4:26-cv-00188 (W.D. Mo.); *Browning v. Station Casinos LLC*, No. 2:26-cv-00603 (D. Nev.); *Carter v. Sig Sauer, Inc.*, No. 1:26-cv-00098 (D.N.H.); *Chavez v. Plan Pros., LLC*, No. 3:26-02692 (D.N.J.); *Henson v. Howard Cnty. Gen. Hosp., Inc.*, No. 1:26-cv-01172 (D. Md.); *Hodges v. Wash. Reg'l Med. Sys.*, No. 5:26-cv-05070 (W.D. Ark.); *Knaggs v. Gilbane, Inc.*, No. 1:26-cv-00153 (D.R.I.); *Macey v. J.E. Dunn Constr. Co.*, No. 4:26-cv-00173 (W.D. Mo.); *McCullough-Adams v. John Hopkins Health Sys. Corp.*, No. 1:26-cv-00515 (D. Md.); *Scholin v. Digi-Key Corp.*, No. 0:26-cv-01485 (D. Minn.); *Rawles v. Med. Fac. Assocs., Inc.*, No. 1:26-cv-00929 (D.D.C.); *Wakefield v. Insulet Corp.*, No. 1:26-cv-10971 (D. Mass.); *Wolfe v. FJ Mgmt. Inc.*, No. 2:26-cv-00383 (D. Utah).

breach of fiduciary duty. What these copycat complaints never allege are any facts from which the Court can infer that the fiduciary process the defendants—in this case, Ivanti and unnamed individual fiduciaries—used to select or monitor the American Century TDFs was imprudent.

This omission is fatal. The Supreme Court has made clear that ERISA fiduciary decisions involve "difficult tradeoffs" within a "range of reasonable judgments," and that courts must give those judgments due regard at the pleading stage. *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Because these cases involve context-specific inquiries about process-based claims, plaintiffs must do more than merely allege that an investment underperformed in hindsight. Courts require allegations of a meaningful, comparable benchmark and sustained, material underperformance.

Plaintiffs fail on both fronts. They offer no meaningful benchmark and no allegations of sustained, material underperformance. Rather, they insist that Defendants' process was flawed because the American Century TDFs, in hindsight, trailed dissimilar, more aggressive funds at two limited snapshots in 2018 and 2019—before the proposed class period—and then "approximate" losses years later without explanation. These comparisons are invalid. They ignore fundamental differences in asset allocation, glide path, investment strategy, and risk profile. And rather than confront this mismatch, the Complaint papers over it with irrelevant metrics (e.g., Alpha, Batting Average, and Turnover Ratio) that repackage the same flaw. They change nothing. Plaintiffs allege no like-for-like comparison, no class-period performance, and no sustained and material underperformance.

At bottom, this lawsuit—and the thirteen others strike suits like it—seeks to impose a categorical rule that selecting the conservative, risk-conscious American Century TDFs is per se imprudent based only on immaterial underperformance against dissimilar, more aggressive TDFs. This blanket attack is not about fiduciary process. It is a hindsight challenge—designed for

2

replication across as many copycat complaints as possible—to a risk-mitigation investment strategy that is perfectly acceptable under ERISA. The Complaint should be dismissed in its entirety.

## BACKGROUND

**The Plan.** Ivanti is a global IT software company headquartered in South Jordan, Utah. Compl. ¶ 12.[2] Ivanti voluntarily sponsors the Ivanti Inc. 401(k) Plan ("Plan"), a defined-contribution plan designed to help its employees save for retirement. *Id.* ¶¶ 1, 13, 15-17. Each year, Ivanti makes millions of dollars in matching contributions to benefit Plan participants. From 2020 through 2024, those contributions totaled nearly $15.5 million. Exs. 1-5, 2020-2024 Plan Form 5500s at 4.[3] This generous approach has allowed Ivanti's employees to accumulate approximately $216.4 million in Plan assets as of year-end 2024. Compl. ¶ 20; Ex. 5, 2024 Plan Form 5500 at 4.

The Plan offers participants many choices for how to invest and save for their retirements. Participants can allocate the assets in their Plan accounts across a broad spectrum of over 20 investment options. Exs. 1-5, 2020-2024 Plan Form 5500s at 5. These options include a diversified lineup of mutual funds and collective investment trusts covering multiple asset classes, and both actively and passively managed funds. *Id.*[4]

---

[2] Ivanti, Inc., *About Us*, https://www.ivanti.com/company/about-ivanti (last visited June 1, 2026).

[3] In deciding a motion to dismiss, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[.]" *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 863 (10th Cir. 2023). The Plan's Form 5500s are "unquestionably matters of public record," as "[t]hey are filed with the United States Department of Labor and are publicly available online." *Smith v. Shoe Show, Inc.*, No. 1:20-cv-00813, 2022 WL 583569, at *1 n.2 (M.D.N.C. Feb. 25, 2022).

[4] Actively managed funds use portfolio managers to buy and sell stocks in an effort to outperform the market. *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1150 n.10 (10th Cir. 2023). Passively managed funds track an established market index, and the portfolio manager does not make any independent choices. *Id.* As a result, "they are generally less expensive than actively managed funds." *Id.*

Against this backdrop—and with only threadbare allegations—Plaintiffs seek to impugn the integrity of the process by which the Plan was managed with a hindsight attack on a single investment option offered in the Plan: the American Century TDFs. Compl. ¶¶ 62-101.

**Target Date Funds.** TDFs are not a single investment product, but a category of strategies. All TDF series offer a suite of "vintages" aligned with a participant's expected retirement year that automatically shift from growth to preservation over time. As retirement approaches, equity exposure decreases, fixed income increases, and risk is gradually reduced according to the fund's "glide path," which determines how quickly and to what extent this occurs. *Id.* ¶¶ 27-31, 33.

But the similarities end there. TDFs with the same target date can differ in fundamental ways. As both Plaintiffs and the Department of Labor recognize, funds within this category can have different investment strategies, fee structures and—most critically—employ different glide paths. *Id.* ¶¶ 35, 37, 50; U.S. Dep't of Labor, *Target Date Retirement Funds - Tips for ERISA Plan Fiduciaries*, at 1 (Feb. 2013) ("TDF Tips").[5] Some follow a "to retirement" approach, reaching their most conservative allocation at the target date; others follow a "through retirement" approach, maintaining higher equity exposure beyond the target date and only becoming most conservative years later. Compl. ¶ 35; TDF Tips at 1. These distinctions are not incidental—rather, they reflect different, deliberate risk-return tradeoffs and lead to different performance outcomes. TDF Tips at 1. In short, TDFs are not interchangeable just because they share a label. *See Fitzpatrick v. Neb. Methodist Health Sys., Inc.*, No. 8:23-cv-00027, 2023 WL 5105362, at *2 (D. Neb. Aug. 9, 2023) ("[TDFs] may differ depending on their intended glide path, asset allocation, and degree to which the underlying investments are actively managed.").

---

[5] https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds-erisa-plan-fiduciaries-tips.pdf (last visited June 1, 2026).

The American Century TDFs reflect the conservative end of this spectrum. They employ a "to" glide path designed to reduce risk, moving out of equities more quickly than many peers and maintaining a more conservative posture in the years leading up to retirement. Compl. ¶¶ 35-36; Am. Century Invs., *One Choice® Target Date Portfolios* ("[W]e take an intentionally moderate approach. This means deliberately balancing risks to help manage losses. Sure, we could aim for the highest growth (like some other target dates), but that could also expose *you* to greater risks and higher losses.").[6] This deliberate choice has predictable outcomes. The American Century TDFs may capture less upside than more aggressive funds during strong equity markets, but they are designed to hold up better in downturns and deliver steadier risk-adjusted returns over time. *Id.* In the context of a retirement plan, that is not a flaw—it is a feature.

Plaintiffs' comparators take the opposite approach. The TDFs offered by American Funds, Vanguard, T. Rowe Price, and BlackRock (collectively, the "Comparator TDFs") generally maintain higher equity exposure and pursue more aggressive glide paths aimed at maximizing returns. These differences affect performance. In simple terms, the Comparator TDFs chase higher returns while remaining exposed to greater downside risk; the American Century TDFs trade upside for greater downside protection. The following chart summarizes the core structural differences between the American Century and Comparator TDFs.[7]

---

[6] https://www.americancentury.com/invest/accounts/one-choice-portfolios/target-date/ (last visited June 1, 2026).

[7] *See* Compl. ¶ 36 (American Century TDFs' glide path); *Dawson v. Brookfield Asset Mgmt. LLC*, No. 1:25-cv-00852, 2026 WL 835553, at *14 (N.D. Ohio Mar. 26, 2026) (American Century TDFs' investment strategy); *Abel v. CMFG Life Ins. Co.*, No. 3:22-cv-00449, 2024 WL 307489, at *2 (W.D. Wisc. Jan. 26, 2024) (Comparator TDFs' glide paths and investment strategies).

| TDFs | Asset Allocation[8] (Equity/Bond) | Glide Path | Investment Strategy | Risk Profile |
|---|---|---|---|---|
| American Century | 71.2/22.5 | To | Active | Conservative |
| American Funds | 81.7/10.1 | Through | Active | Aggressive |
| Vanguard | 88.7/9.8 | Through | Passive | Aggressive |
| T. Rowe Price | 88.2/8.1 | Through | Active | Aggressive |
| BlackRock | 93.0/5.3 | To | Passive | Aggressive |

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations that merely invite speculation or rest on conclusory assertions do not suffice. *See Twombly*, 550 U.S. at 555. Nor must courts accept legal conclusions or factual assertions contradicted by the complaint itself or materials properly considered at the pleading stage. *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013).

These principles carry particular force in ERISA cases. Because the prospect of burdensome discovery can exert substantial settlement pressure on even the weakest of claims, courts apply a "careful, context-sensitive scrutiny" to ensure that a complaint plausibly alleges a fiduciary breach before allowing it to proceed. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718-19 (2d Cir. 2013); *Dudenhoeffer*, 573 U.S. at 425. This scrutiny reflects a further reality: fiduciary decision making in this context necessarily involves tradeoffs among competing, reasonable approaches. That is why the Supreme Court has instructed courts to "give

---

[8] 2045 vintage as of the first quarter of 2020. The asset allocations for all vintages may be found in Appendix B.

6

due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.

Against this backdrop, hindsight comparisons or disagreement with one reasonable approach over another, without more, do not cross the line from a possible claim to a plausible claim. *See id.*; *Matney v. Barrick Gold of N. Am., Inc.*, No. 2:20-cv-00275, 2022 WL 1186532, at *3 (D. Utah Apr. 21, 2022), *aff'd*, 86 F.4th 1136 (10th Cir. 2023).

## ARGUMENT

Count I asserts—based only on backward-looking performance—that Defendants breached their fiduciary duties by failing to monitor the American Century TDFs. But this allegation rests on the sleight of hand described above: it treats deliberately opposed investment strategies as interchangeable and then faults Defendants for selecting one that prioritizes downside protection over return maximization. Unsurprisingly, this choice meant that the American Century TDFs at times trailed Plaintiffs' more aggressive, equity-heavy Comparator TDFs in certain market environments, but any such underperformance was episodic and immaterial. Compl. ¶¶ 73, 87, 124-35. Count II adds nothing of substance—Plaintiffs allege that Ivanti failed to monitor unnamed Plan fiduciaries, a derivate claim dependent on the same faulty comparison. *Id.* ¶¶ 136-41.

## I.       Plaintiffs Fail to State an Imprudence Claim Based on the American Century TDFs.

Plaintiffs claim that Defendants breached their fiduciary duties by failing to remove the allegedly underperforming American Century TDFs from the Plan by "early 2020." *Id.* ¶¶ 62-101. But ERISA does not permit second-guessing fiduciaries based on outcomes alone. Instead, imprudence turns on a fiduciary's process "viewed from the perspective of the time of the challenged decision rather than from the vantage point of hindsight." *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1123 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021); *see also Matney*, 2022 WL

7

1186532, at *4 (similar). This is because ERISA "requires prudence, not prescience." *Matney*, 80 F.4th at 1146.

Plaintiffs allege zero facts about Defendants' process, so they must instead provide a "[]sufficient factual basis to support a reasonable inference of imprudence." *Id*. at 1155. In other words, they must allege enough facts from which "the court can infer . . . that the fiduciary's decision[-] making process was flawed." *Matney*, 2022 WL 1186532, at *4. Pointing to allegedly underwhelming investment performance is not enough. *See Matney*, 80 F.4th at 1148 (adopting the Eighth Circuit's "approach to an ERISA plaintiff's pleading burden"). To move a claim of underperformance from possible to plausible, a plaintiff must allege that the challenged fund underperformed relative to a "sound basis for comparison—a meaningful benchmark"—such that no prudent fiduciary in like circumstances would have offered the challenged fund. *Id.* at 1147 (quoting *Meiners v. Wells Fargo & Co*., 898 F.3d 820, 822 (8th Cir. 2018)). Otherwise, a plaintiff could evade dismissal simply by pointing to any fund that, in hindsight, performed better—even one pursuing a different strategy.

Even if a plaintiff properly identifies comparators with similar holdings, investment strategies, and risk profiles, *see Matney*, 80 F.4th at 1148, he or she must still allege sustained, material underperformance: "a showing of imprudence [does not] come down to simply pointing to a fund with better performance." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022); *see also Meiners*, 898 F.3d at 823 ("No authority requires a fiduciary to pick the best performing fund."). Otherwise, ordinary market variation—particularly across funds making different, but reasonable, risk tradeoffs—would become a basis for federal litigation.

Plaintiffs satisfy none of these requirements. They plead no facts about process, no meaningful benchmark, and no sustained or material underperformance. Instead, they offer hindsight

8

performance comparisons to dissimilar, more aggressive TDFs cherry-picked from two brief periods before the proposed class period and then extrapolate unexplained "losses" years later. Compl. ¶¶ 68-69. This does not support a plausible inference of imprudence; it is speculation dressed as analysis. Without allegations that tie performance to a flawed fiduciary process, the Complaint does not cross the line from possible to plausible. It should be dismissed.

### A.      Plaintiffs Fail to Establish Any Meaningful Benchmarks.

Plaintiffs fail at requirement one: they do not plead a meaningful benchmark, as the Tenth Circuit requires. The Complaint contains no facts showing that the Comparator TDFs "have similar investment strategies, similar investment objectives, or similar risk profiles" as the American Century TDFs—the facts needed to establish a "sound basis for comparison." *Matney*, 80 F.4th at 1148; *see also Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (similar). Plaintiffs allege only that the American Century TDFs use a "to" glide path. Compl. ¶ 36. They say nothing about the Comparator TDFs' glide paths, asset allocations, equity exposure, fixed-income exposure, use of active or passive strategies, or overall risk profiles. Without these allegations, there is no basis to conclude that the funds are comparable at all.

The absence of such allegations is telling given that the Complaint identifies these very features—glide path, active versus passive strategy, and asset allocation—as the critical dimensions along which TDFs differ. *See, e.g.*, Compl. ¶ 35 (TDFs are "often categorized" based on glide path), ¶ 36 (TDFs are "considered differentiated by whether they consist of index (passive) funds or active funds"), ¶ 50 ("asset allocation" is one of "[t]he most critical criteria for selecting and retaining" a TDF). Yet Plaintiffs pleads none of them as to their purported comparators.

The reason why is simple: the American Century TDFs are conservative, risk-conscious funds; the TDFs Plaintiffs prefer are more aggressive and equity-heavy. *See supra* at p. 6. These differences go to the core of how the funds are constructed and what they are designed to do. This

makes Plaintiffs' comparators inapt, as the Northern District of California recently recognized in dismissing a similar challenge to the American Century TDFs. *See Phillips v. Cobham Advanced Elec. Sols., Inc.*, No. 5:23-cv-03785, 2025 WL 2689268, at \*2, \*5-7 (N.D. Cal. Sept. 19, 2025) (rejecting comparison of the American Century TDFs to other TDFs—including the same American Funds and T. Rowe Price TDFs Plaintiffs point to here—with "fundamentally different investment strategies and risk preferences," as well as different asset allocations and glide paths).

Absent such allegations, courts routinely reject TDF lawsuits for lack of meaningful benchmarks at the motion to dismiss stage. *See, e.g.*, *Matney*, 80 F.4th at 1153-54, n.14 (affirming dismissal for failure to provide a meaningful benchmark where comparators had "materially different investment strategies"); *Meiners*, 898 F.3d at 823-25 (the "omission of any meaningful benchmark" left only the fact that a fund with a "different investment strategy ultimately performed better," which "does not establish anything" about prudence); *Smith*, 37 F.4th at 1167 (comparators "inapt" because each fund had "distinct goals and distinct strategies"); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1024 (9th Cir. 2025) (comparators not "truly comparable" given "different aims, different risks, and different potential rewards"), *cert. granted*, No. 25-498, 2026 WL 120679 (Jan. 16, 2026); *Batt v. 3M Co.*, No. 0:25-cv-00319, 2026 WL 674322, at \*6 (D. Minn. Mar. 10, 2026) (same); *Macias v. Sisters of Charity of Leavenworth Health Sys.*, No. 1:23-cv-01496, 2025 WL 4095840, at \*6 (D. Colo. Jan. 6, 2025) (lack of "factual allegations concerning [] management styles," i.e., "active, passive, or some combination of the two, . . . preclude[d] a finding that the selected comparators allow for an apples-to-apples comparison"); *Fitzpatrick*, 2023 WL 5105362, at \*7 (rejecting claim where complaint failed to plead comparator characteristics, leaving "the composition of the peer groups" a "mystery").

10

Plaintiffs' only justification for their comparisons is the assertion that, because the universe of TDFs is limited, fiduciaries must evaluate options against "market leading and established" alternatives when selecting or retaining a TDF series—even if those funds differ in design and risk profile. Compl. ¶ 44. But that is not the law. *First*, market prominence is not a proxy for comparability. *See Abel*, 2024 WL 307489, at *5 (rejecting plaintiffs' allegation that their comparators were meaningful benchmarks simply because "'they represent the most likely alternatives' due to their market share"); *Bracalente v. Cisco Sys., Inc.*, No. 5:22-cv-04417, 2024 WL 2274523, at *8 (N.D. Cal. May 20, 2024) (similar). *Second*, the "assessment that fiduciaries must do to select [and monitor] a product is different from the comparison courts must do" in evaluating plausibility; courts "cannot, and should not, compare apples to oranges when determining a meaningful benchmark for performance." *Luckett v. Wintrust Fin. Corp.*, No. 1:22-cv-03968, 2024 WL 3823175, at *4 (N.D. Ill. Aug. 14, 2024).

This is exactly what Plaintiffs ask this Court to do—compare apples to oranges. The American Century TDFs and Plaintiffs' preferred comparators differ in ways that matter: asset allocation, glide path, investment strategy, and risk profile. *See supra* at p. 6. These are not minor variations; they define what the funds are designed to do. The Complaint glosses over these differences, but the courts do not. As the Tenth Circuit has recognized, funds with different strategies "have different aims, different risks, and different potential rewards," and comparing them proves nothing. *Matney*, 80 F.4th at 1153. The same is true here: pointing to funds pursuing different objectives "does not establish anything" about prudence. *Id.* at 1148. (quoting *Meiners*, 898 F.3d at 823). Other circuit courts have said the same in this context—TDFs with different glide paths, allocations, and objectives are simply not comparable. *See, e.g.*, *Anderson*, 137 F.4th at 1024;

11

*Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1180 (11th Cir. 2024); *Smith*, 37 F.4th at 1167; *Meiners*, 898 F.3d at 823-25.

The Comparator TDFs thus fail to "provide a sound basis for comparison—a meaningful benchmark." *Matney*, 80 F.4th at 1147. Plaintiffs' imprudence claim fails for this reason alone.

**B.      Even Assuming a Meaningful Benchmark, Plaintiffs Do Not Allege Material, Sustained Underperformance.**

Even if the Court accepted Plaintiffs' benchmarks, the Complaint still fails. Plaintiffs allege that the American Century TDFs underperformed the Comparator TDFs by 2.97% at most—and often far less—during two arbitrary snapshots predating their proposed six-year class period. *See* App. A; Compl. ¶¶ 20, 66-101; Dkt. 1-1. This is not the type of sustained, material underperformance that supports a plausible inference of imprudence.

Start with Plaintiffs' timeframe. They do not allege sustained underperformance—only a transient gap, based on three- and five-year trailing averages reported in 2018 and 2019, that falls outside the proposed class period. This is not enough. Courts routinely reject allegations of underperformance spanning ***three to five years*** as "relatively short periods of underperformance." *Birse v. Century Link, Inc.*, No. 1:17-cv-02872, 2020 WL 1062902, at *6 (D. Colo. Mar. 5, 2020) (quoting *Dorman v. Charles Schwab Corp.*, No. 4:17-cv-00285, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (dismissing allegations that a fund "persistently and/or materially underperformed" for three to five years, as such allegations did not support an inference of imprudence)); *see also Dawson*, 2026 WL 835553, at *18 (N.D. Ohio Mar. 26, 2026) (allegations that the American Century TDFs underperformed in 2019, 2021, 2023, and 2024 were insufficient: "[s]uch a small window of time cannot plausibly establish imprudence"); *Nolan v. Sonic Auto., Inc.*, No. 3:25-cv-00474, 2026 WL 1195596, at *8 (W.D.N.C. May 1, 2026) (holding that three-year underperformance "by as much as 7.03% . . . is insufficient to plausibly allege imprudence.").

12

This is particularly true for a long-term investment like a TDF: "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision." *Smith*, 37 F.4th at 1166. Under Plaintiffs' view, "disappointing short-term losses" should prompt fiduciaries to "precipitously sell[] a well-constructed portfolio," a course of action that is "one of the surest ways to frustrate the long-term growth of a retirement plan." *Id.*

But ERISA imposes no such duty to chase recent winners. Fiduciaries are not required to "reflexively jettison investment options in favor of the prior year's top performers." *Jones v. Dish Network Corp.*, No. 1:22-cv-00167, 2023 WL 2644081, at *7 (D. Colo. Mar. 27, 2023) (quoting *Patterson v. Morgan Stanley*, No. 16-cv-06568, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019)); *see also Meiners*, 898 F.3d at 823. "[A] fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy." *Jones*, 2023 WL 2644081, at *7. Accordingly, only sustained and material underperformance—i.e., "consistent, ten-year underperformance that is "substantial"—can support a plausible prudence claim. *Patterson*, 2019 WL 4934834, at *10.

Plaintiffs come nowhere close to meeting this standard. They do not allege sustained underperformance—let alone underperformance approaching ten years—and, in fact, allege nothing about the American Century TDFs' performance from 2020 onward. This omission is striking given that they purport to calculate "approximate performance losses" through December 2023. Compl. ¶ 68. Rather than use ***actual*** performance, Plaintiffs ***extrapolate*** performance (despite readily available actual performance) from their 2018 and 2019 snapshots before the proposed class period to "approximate" continued underperformance through 2023. *Id*. This is not a plausible allegation of sustained, material underperformance; it is speculation layered on hindsight.

13

Plaintiffs omitted post-2019 performance data not because they overlooked it, but because it refutes their theory. As of the first quarter of 2020—the very moment at which, according to Plaintiffs, the need to replace the American Century TDFs was first apparent—a majority of the funds' vintages were outperforming their Comparator TDF counterparts across one-, three-, five-, and ten-year trailing returns. *See* App. C.[9] And this was no temporary blip. As of 2022, a majority of American Century TDF vintages were still outperforming their corresponding Comparator TDF vintages based on one-, three-, five-, and ten-year trailing returns. *See* App. D.[10] As the Northern District of California recognized in dismissing a similar challenge to the American Century TDFs, they "outperformed more than half of the TDFs in their [Morningstar] peer group" in 2018, 2020, and 2022—a "track record [that] does not permit an inference" of imprudence. *Phillips*, 2025 WL 2689268, at *5.

But even accepting Plaintiffs' cherry-picked timeframe and mismatched comparators on their own terms, their allegations still fail. Their own charts show that the alleged "underperformance" is immaterial: just 0.76% to 2.97% for three-year trailing returns, and just 0.36% to 2.26% for five-year trailing returns, depending on vintage. *See* App. A; Dk. 1-1. Just months ago, the Northern District of Ohio rejected "such modest underperformance" by the American Century TDFs as "insufficient to infer imprudence." *Dawson*, 2026 WL 835553, at *19. Indeed, the plaintiff in *Dawson* alleged ***even greater*** underperformance than Plaintiffs do here. *See id.* ("[T]he range of outperformance generally was between less than 1% and 3%, and never exceeding 4%."). Courts

---

[9] Appendices B, C, and D are based on Morningstar data, which the Court may consider because it is publicly accessible and central to Plaintiffs' claims. *See Smith*, 37 F.4th at 1168; *Wilcox v. Georgetown Univ.*, No. 1:18-cv-00422, 2019 WL 132281, at *4 n.5 (D.D.C. Jan. 8, 2019).

[10] For the minority of American Century TDF vintages that did not outperform the corresponding vintages of the Comparator TDFs as of the first quarter of 2020 and year-end 2022, the differences in performance are not material as a matter of law. *See infra* at pp. 14-15.

across the country agree. *See, e.g.*, *Jones*, 2023 WL 2644081, at *7 (underperformance "by 1% to 3.5%" based on "three-and five-year annualized returns" was "insufficient to show . . . an imprudent monitoring process"); *Abel*, 2024 WL 307489, at *5 ("[U]nderperformance during three and five-year periods . . . ranging from 0.2% to around 5%, with the average underperformance being between 1 and 3%," was "not enough to carry plaintiffs' [imprudence] claims . . . past the pleading threshold.") (collecting cases "finding alleged, short-term differences in performance of between 1.14 to 4.4% immaterial"); *Nolan*, 2026 WL 1195596, at *8 (underperformance "by as much as 7.03% between 2017 and 2019 . . . is insufficient to plausibly allege imprudence").

Recognizing the weakness of their underperformance allegations, Plaintiffs stuff their Complaint with exotic performance metrics, hoping to get by on volume rather than substance. *See* Compl. ¶¶ 53-54, 67. Courts have rejected this tactic repeatedly—including in recent lawsuits challenging the American Century TDFs. *See Dawson*, 2026 WL 835553, at *20 (rejecting "turnover ratio" allegations); *Phillips*, 2025 WL 2689268, at *7 (rejecting "Beta ratings" allegations). This is because such metrics "do[] not alter [the] analysis," as they are "merely additional measurements of investment performance" and "therefore immaterial." *Hall v. Cap. One Fin. Corp.*, No. 1:22-cv-00857, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023); *see also Beldock v. Microsoft Corp.*, No. 2:22-cv-01082, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (same). As Plaintiffs themselves recognize, "the actual performance of an investment is the most important criteria to the investor (plan participant)," Compl. ¶ 52—i.e., whether the funds delivered returns consistent with their strategy—not a scattershot of alternative metrics simply repackaging the same performance data.

Moreover, even if these metrics mattered, they render less plausible Plaintiffs' claim. For example, Plaintiffs allege that "a positive Alpha indicates the portfolio has performed better than

15

its beta would predict," while "a negative Alpha indicates the portfolio has underperformed[.]" Compl. ¶ 53. Yet several American Century TDF vintages posted positive Alphas in 2018 and 2019. *See* Dkt. 1-1 at 4, 6, 8, 10, 12, 14. In other words, they outperformed expectations. The same is true for "Batting Average," which Plaintiffs say measures a manager's ability to beat the market. Compl. ¶ 53. The American Century TDFs' 5-year batting averages ranged from .383 to .533— meaning they matched or exceeded the market nearly 40% to 53% of the time. Dkt. 1-1 at 2, 4, 6, 8, 10, 12. These metrics do not support Plaintiffs' theory—they refute it.

At bottom, Plaintiffs challenge the American Century TDFs' conservative investment strategy. But ERISA fiduciaries need not "adopt a riskier strategy simply because that strategy may increase returns." *Anderson*, 137 F.4th at 1024; *see also Reetz v. Lowe's Cos.*, No. 5:18-cv-00075, 2021 WL 4771535, at *9 (W.D.N.C. Oct. 12, 2021) ("ERISA does not require fiduciaries to . . . prioritize [] returns over other considerations, including the higher risk associated with higher expected returns."), *aff'd sub nom.*, *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2023). Rather, fiduciaries may choose from a "range of reasonable judgments," *Hughes*, 595 U.S. at 177, as *all* investment strategies entail tradeoffs:

> In years when the equity market is hot, a more aggressive [TDF] that retains equities longer will appear to outperform a fund that shifts toward more conservative assets like bonds sooner. But that snapshot does not mean it is objectively imprudent to adopt a more conservative strategy—the tables turn when the market is down.

*Pizarro*, 111 F.4th at 1181.

"[T]his is precisely the tradeoff that [Defendants] anticipated": the American Century TDFs "were generally more insulated from market volatility and performed better during down markets, at the expense of missing some potential upside." *Phillips*, 2025 WL 2689268, at *7.

16

Plaintiffs may prefer a different approach, but "[t]he Court must give due regard" to Defendants' decision "to mitigate risk." *Id.* Plaintiffs' imprudence claim should be dismissed.[11]

## **CONCLUSION**

In order to move their underperformance claim related to the American Century TDFs from possible to plausible, Plaintiffs were required to provide a "[]sufficient factual basis to support a reasonable inference of imprudence" by identifying: (i) a meaningful benchmark; and (ii) sustained, material underperformance. *Matney*, 80 F.4th at 1146-48, 1155. As discussed above, Plaintiffs do neither. They instead allege only that the American Century TDFs—in hindsight—slightly trailed dissimilar, more aggressive TDFs at two brief snapshots in time and then extrapolate unexplained "losses" years later. These allegations fall well short of the Tenth Circuit's requirements and, accordingly, the Court should dismiss Plaintiffs' claims in full with prejudice.

DATED this 2nd day of June, 2026.

**RAY QUINNEY & NEBEKER P.C.**

*/s/ Beth J. Ranschau*
Beth J. Ranschau
Emily B. Nuvan

**GROOM LAW GROUP, CHARTERED**

William J. Delany (Pro Hac Vice)
Larry M. Blocho Jr. (Pro Hac Vice)

*Attorneys for Defendant Ivanti, Inc.*

---

[11] Because Plaintiffs' duty to monitor claim is derivative of their fiduciary breach claim, it also fails. *See Matney*, 80 F.4th at 1158-59.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June 2026, I electronically filed the foregoing **DE-FENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** using the CM/ECF system of the District Court of the State of Utah which sent notification of such filing to:

Jason R. Hull, Esq.
**MARSHALL OLSON & HULL, PC**
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
Phone: (801) 456 7655
jhull@mohtrial.com

Alexandra Rudenco, Esq. (Pro Hac Vice forthcoming)
John Hughes, Esq. (Pro Hac Vice)
**MILBERG, PLLC**
800 S. Gay St., Suite 1100
Knoxville, TN 37929
Phone: (865) 247 0080
arudenco@milberg.com
jhughes@milberg.com

*Attorneys for Plaintiffs and Proposed Class*

/s/ Ryan J. Lowe
Ryan J. Lowe

18